UNITED STATES DISTRICT COURT

WESTERN DISRICT OF NEW YORK

| | | |
|---|---|---|
| DEYANNA DAVIS | ) | Case No. _____ 26 CV 380 |
| V | ) | |
| THE COUNTY OF ERIE, | ) | Jury Trial |
| HONORABLE KENNETH CASE, | ) | |
| JOHN FLYNN, | ) | |
| ADA RYAN FLAHERTY, | ) | |
| ADA RYAN HAGGERTY, | ) | |
| DANIELLE  PHILIPS, | ) | |
| JOHN DOE AND JANE DOE, | ) | |
| ERIE COUNTY HOLDING CENTER | ) | |
| ANN DILLION FLYNN, | ) | |
| THE BUFFALO POLICE | ) | |
| ERIE COUNTY MEDICAL CENTER | ) | |
| LAWRENCE DALTON, | ) | |
| SAMUEL DAVIS | ) | |
| FRANK LOTEMPIO | ) | |
| ERIN TRESMOND | ) | |
| NICHOLAS DIFONZO | ) | |
| DAVID SCHOPP | ) | |

**ALL IN THEIR OFFICIAL AND UNOFFICIAL CAPACITIES**

**B. PARTIES TO THIS ACTION**

The County of Erie

Kenneth Case

Supreme Court Justice

50 Delaware Avenue

Buffalo, New York 14202


Honorable Sam Davis

Buffalo, City Court

25 Delaware Avenue

Buffalo, New York, 14202


John Flynn,

Mathias Lippes, LLC

50 Fountain Plaza, Suite 1700

Buffalo, New York 14202


Ryan Flaherty

ADA Erie County

50 Delaware Avenue

Buffalo, New York 14202


Ryan Haggerty,

ADA Erie County

50 Delaware Avenue

Buffalo, New York 1420


Michelle Phillips

Appellate Court Clerk

Appellate Court, Fourth Department

50 East Avenue, Suite 200

Rochester, New York 14604


Lawrence Dalton

Appellate Court Clerk

Appellate Court, Fourth Department

Rochester, New York 14604


Ann Dillion-Flynn

Appellate Court Clerk

Appellate Court, Fourth Department

50 East Avenue, Suite 200

Rochester, New York, 14604


John and Jane Doe(s)

Appellate Court Clerks

Appellate Court Fourth Department

50 East Avenue Suite 200

Rochester, New York 14604


Frank Lotempio III

Attorney At Law

181 Franklin Street

Buffalo, New York 14202


Erin Tresmond

Attorney At Law

Legal Aid Bureau of Buffalo, Inc.

290 Main Street

Buffalo, New York 14202

Nicholas Difonzo

Lawyer

Legal Aid Bureau of Buffalo, Inc.

290 Main Street

Buffalo, New York 14202


David Schopp

Executive Director.

Legal Aid Bureau of Buffalo, Inc

290 Main Street

Buffalo, New York 14202


John and Jane Doe(s)

Erie County Sheriff's

Erie County Holding Center

10 Delaware Avenue

Buffalo New York 14202


John and Jane Doe(s)

Medical Personal

Erie County Holding Center

40 Delaware Avenue

Buffalo, New York 14202


John and Jane Doe(s)

Erie County Medical Center

462 Grider Street

Buffalo, New York 14215

John Doe

NY State Troopers

5 Town Place

Clarence, New York 14031

## STATEMENT OF JURISDICTION

This court as jurisdiction over this action pursuant as the plaintiff is asserting a claim under 42 U.S.C. section 1983, because the violation occurred in the Western District of New York.

A.  The Basis for Jurisdiction is a Federal Question

B.  The defendants, acting under the color of state law. Deprived the plaintiff of her Constitutional Right Fifth Amendment right to due process of law (Sixth Amendment) to a speedy and public trial by jury with the assistance of effective assistance of counsel and her Eighth Amendment Right Cruel and unusual punishment.

### Statement of Claim

First Claim:                    **CRUEL AND UNUSAL PUNISHMENT**

On June 1, 2020, during the George Floyd demonstration on Bailey Avenue in Buffalo, New York, Deyanna Davis accidentally hit State Trooper, Ronald Ensminger.  There were two men in the car with Deyanna at the time of the accident, Semaj Pigram and Walter Stewart.  Deyanna Davis was leaving her mother in laws re-pass which was held at 12 Langmeyer Street, Buffalo, New York 14215. Deyanna was asked by her Husband Jordan Davis to give the two gentleman a

ride. As she turned onto Baily Avenue Semaj Pigram who was seated in the back passenger seat shot her in her side. She was slumped down in the driver's seat but continued to drive trying to get out of harm's way. She was not aware Pigram had shot her or what the sudden pain she was experiencing. The loud bang confused her. Unexpectedly she turned into the middle of the demonstration taking place on Bailey Avenue. Deyanna Davis was not a part of the demonstration and did not know the demonstration was taking place. Police officers from all over Western New York were present trying to contain a crowd. Smoking bombs and tear gas were being used to control the crowd, and  traffic was tied up and the area was in total chaos. Deyanna Davis could not see what was going on because she was slumped over because she had been shot. She continues to drive not noticing what was going on. She had been shot and feared for her life. Semaj Pigram was not aware of the problem on Bailey Avenue. He knew he had shot Deyanna Davis and tried to get away from the police. Pigram began firing shots at the police from the rear seat. He threw his gun into the front seat, jumped out of the vehicle, and ran from the police. After a short pursuit he was apprehended and taken into custody. Deyanna was taken into custody but was taken to Erie County Medical Center because they had been shot. The officers began firing into the car after the trooper had been hit by Deyanna. Deyanna was shot 4-6 times. First by Semaj Pigram followed by three shots from officers who were unaware that she had been shot prior to hitting the trooper. Everything was a surprise to everyone.  The officer thought Deyanna was a part of the demonstration retaliating and that she was a part of the demonstrators acting with malice. Deyanna was removed from the care by the ambulance attendants and taken to Erie County Medical Center. She advised the ambulance attendants that she had been shot. She was rushed into surgery. After surgery she was placed on the ninth-floor police lock up. The officer interfered with Deyanna's medical treatment throughout the  two days she remained in the hospital.  They refused to allow

the attending nurses to distribute the prescribed medications for pain. Deyanna was not allowed to contact her family. Her family became aware of the problem by watching the news and identified her truck. A day after the shooting and surgery Deyanna was signed out of the hospital against the doctor's advice. Deyanna signed the release forms because the officers told her she had to sign the release form and must be released.Not wanting to anger the police and to avoid any additional punishment from the officers who had been punishing her Deyanna signed release papers. Upon release the escorting officers, names unknown refused to allow employees to assist her with a wheelchair to the police vehicle. The officers refused Deyanna any assistance. Deyanna was forced to struggle in pain walking without assistance down the long hallways of the hospital through the parking area and made to climb into the rear seat of the squad car, hand cuffed and shackled. She was taken to Buffalo Police Holding Center located at 122 W. Eagle Street, Buffalo, New York 14202.  She should not have been placed onto this facility because she had been arraigned, She Should have been placed into Erie County Holding Center. Once in the Buffalo Police Holding Center, a Sergeant ( name unknown) on duty came to her holding cell.  Deyanna was in pain asking for help and the Sergeant stated, "I don't feel sorry for you, you harmed one of our own." Deyanna lay in pain until the shift changed without medication, she had to crawl on the dirty floor to get water or use the toilet. When the shift changed, the next area sergeant ordered Deyanna to return to the hospital.

Jordan Davis asked his wife Deyanna to give the two men a ride.

When Deyanna was released from the hospital, she was taken to Erie County Holding Center. Once again, she was held in an isolation cell that was dirty ( Intake 1).  She remained in the area for a couple of hours.  She was escorted (walking) without assistance from the medical staff or sheriff's deputies. Erie County Holding Center's medical department does have wheelchairs. Once

7

in the medical department Deyanna was forced to sit in a holding cell before being seen by the medical staff. Once medical staff completed the intake she was placed into the general population. The Holding Center has a medical unit within the facility where Deyanna should have been placed. Instead, she was placed into harm's way in general population ( A-Long Block) where officers could not protect her. Deyanna remained in custody at Erie County Holding Center for approximately 45 days. While there she was refused medical attention. She was refused pain medications prescribe by the doctors at Erie County Medical Center and was given over the counter Tylenol. She was moved from gallery to gallery, including an isolation cell area where her clothing was taken. She was given a wool blanket and forced to lay on a dirty plastic mattress. The area was cold due to the air conditioning being on. A deputy sat at a window for a 24-hour watch in a coat too because it was so cold. Whenever Deyanna had to use the toilet or get water she had to crawl on the cold concrete floors. Deyanna's family members began calling the facility complaining to the Superintendent, Captain, Lieutenant's, and Sergeant's about the problems Deyanna was having. Deyanna was transferred to the Medical Pod eventually and was given her uniform, sheets, and blanket, after laying in crucial pain and mentally and exhausted. She was taunted by deputies throughout her stay because they assumed she had run over the state trooper purposely. They found her guilty of her charges before she was tried or convicted of a crime.

Claim 2 **Denied her right to a jury trial, her right to a speedy trial, and to appear before the grand jury and effective assistance of counsel violating the petitioners Due process Rights guaranteed by the Fifth Amendment of the The U.S. Constitution.**

Deyanna Davis was refused her right to trial, denied her right to effective assistance of counsel, and the prosecution and judge abused their power with the intention to punish Deyanna Davis

for hitting a police officer and to guarantee she be convicted of a crime. She was coerced into accepting a plea and the judge, district attorney and lawyers conspired against Deyanna throughout the case.

From June 1, 2020, until the present date the respondents in this matter have conspired to convict and imprison Deyanna Davis of a crime she did not commit. Her Constitutional right to a jury trial, a speedy trial and to appear before the grand jury was violated, The Criminal Procedure Law was totally ignored by the judge, district attorney and lawyers in this case.

On June 1, 2020, Deyanna Davis, Semaj Pigram and Walter Steward were arrested after a State Trooper was accidentally hit by Dayanna's vehicle during a protest on Bailey Avenue. Deyanna was arraigned on June 3, 2020. At this time Sam Davis was a defense attorney, He is now Buffalo City court Judge. Sam Davis accepted Deyanna's case pro bono in both the State and federal Courts. Louise Nolley, (Deyanna's grandmother) offered her time to help Sam Davis with research on Deyanna's case. Louise had several text conversations with Sam Davis and was researching cases. On July 25, 2020, Deyanna was released from custody on $250,000.00 bail. From July 25, 2020, through March 8, 2021, Deyanna did not have any communication with Sam Davis or the prosecution. The prosecution never submitted a Certificate of Compliances Statement of Readiness for Trial. At this point she tried contacting Sam Davis and did not receive a reply. A few days after the call Sam Davis responded by email. Deyanna requested he file a motion to dismiss the complaint because the prosecution had not moved in on the matter 8 1/2 months after her arrest. At this point Sam Davis stopped all communications with Ms. Nolley. Sam Davis showed little interest in the case therefore Deyanna and her grandmother prepared and filed the motions pro se with the Erie County Clerk. Copies of the motions were delivered to Sam Davis, at Doyle Firm 1260 Delaware Avenue, Buffalo, 14202 and District Attorney John Flynn, at 25 Delaware Avenue,

9

Buffalo, New York 14202, by Louise Nolley, with affidavit of Service. An index number was affixed however the motion was not heard per the clerk because the judge refused to sign the poor person's motion. The court clerk failed to notify Deyanna of the status of the documents filed. Although Sam Davis knew the motions existed, he never addressed the motions in the courtroom on record. The prosecution never addressed the motions and Honorable Judge Case never addressed the motions during court proceedings.

On June 24, 2020, a felony hearing was held in Buffalo City Court virtually. A hearing was conducted and recorded. When reviewed you can see Deyanna Davis struggling to walk without assistance, in pain and unmedicated.

On February 18, 2021, the matter of The People of the State of New York against Semaj Pigram and Deyanna Davis was presented to the grand Jury. Not once was Semaj Pigram mentioned in the record.

On or March 5, 2021, Sam Davis, E-mailed Deyanna and told her the grand Jury had returned with an indictment, and she would be arraigned on the indictment March 17, 2021.

On March 8, 2021, Deyanna and her grandmother, Louise Nolley, wrote and filed a motion to dismiss the indictment with the Erie County Clerk's office due to the prosecutor failing to notify Deyanna of the matter being presented to the Grand Jury in accordance with Criminal Procedure Law. The clerk made a telephone call and refused to accept the motion. He advised Deyanna and Louise to verbally submit the motions on March 17, 2021. Louise Nolley asked the clerk to stamp and date the motion and the clerk complied. According to CPL 190.50 (5)(a)(c) when a person has been arraigned in a local criminal court upon currently undisposed felony complaint charging an offense which is subject of the prospective or pending grand jury proceeding the district attorney

must notify the defendant and her attorney of the prospective or pending grand jury proceeding and accord the defendant a reasonable time to exercise his or her right to appear as a witness in their own behalf.    CPL 190.50(c) dictates that if a motion is filed within 5 days after the arraignment of the indictment the matter must be dismissed.

On March 21, 2021, Deyanna Davis filed a motion to dismiss the indictment in the Erie County Clerk's office.  An Index number was affixed to the motion and Louise Nolley delivered copies of the motions to the district attorney and Sam Davis however the motion was never addressed because once again the judge refused to sign the order. The prosecutor never addressed the motion in court, nor did Sam Davis verbally address the motion in the court.

On June 8, 2021, Deyanna filed an Order to Show Cause and Preliminary Injunction and Temporary Restraining Order (Index number 805919/2023). The matter was assigned to the Honorable Nowak, requesting the court review the case in the interest of justice and to dismiss the complaint in accordance with the law. A hearing was conducted On June 21, 2021. ADA Harmony A. Healy was present in addition to Deyanna Davis and Louise Nolley. The matter was adjourned, (suggested by Honorable Nowak) to amend the complaint to add Honorable Case as a defendant to the action.  An amended complaint was filed, and a hearing was heard on the amended complaint.  Honorable Judge Nowak dismissed the matter stating he did not have jurisdiction to hear the matter due to a Judge Case being added as a respondent.

On July 29, 2020, Attorney Sam Davis received $5,000.00 from Deyanna's family members  a fee for representing Deyanna, after accepting the case pro bono.  Louise Nolley reported this to the Lawyer's grievance committee.  On March 25, 2022, Nolley received a reply from Craig Semple's with a statement from Sam Davis, advising he had received the money.  Nolley was advised that they had found Sam Davis had violated an attorney's ethnic code.

11

On or about July 6, 2021, Deyanna Davis learned that Sam Davis was assigned a Judges seat in Buffalo City Court by Mayor Byron Brown. Sam Davis never notified Deyanna of leaving the case nor was she informed Sam Davis was released from the case by Judge Case.

On July 11, 2022, Sean Kelly was assigned to represent Deyanna at trial. Emily Trott was added to represent Deyanna on August 18, 2022, Mrs. Trott and Sean Kelly felt they could not effectively represent Deyanna at trial. The problem was, the attorneys did not feel she could beat the charge of intentionally hitting the trooper, therefore her objective was to convince Deyanna to accept the plea of three ½ years at this time. Deyanna was determined to go to trial and Emily and Sean felt Deyanna should accept the plea agreement which had been agreed upon by the district attorneys and the attorneys. Deyanna insisted she be given a jury trial. Because Deyanna was losing all hope in all attorney's she requested that her mother and grandmother sit in at all attorney conferences and prepare for trial. The attorneys did not agree with this. The second reason was Sam Davis had failed to prepare a defense or make a file for Deyanna. There was no file to hand over to the new attorneys. Time was of the essence because almost three years had passed and the deadline for having to dismiss the case was near. A trial or plea had to be conducted. Emily Trott and Sean Kelly submitted motions requesting Honorable Judge Case, relieving them from their duty to represent Deyanna. Attorney Trott stated on the record that Sam Davis did not prepare a defense or have a file for Deyanna, the district attorney failed to release all the evidence she had requested and most of the tapes that Flynn did release could not be open and that there were irreparable differences between them and Deyanna. Judge Case, relieved Trott and Kelly from the case on December 9. 2022.

On December 12, 2022, Frank Lotempio 111 was retained by a private organization to represent Deyanna at trial. Frank Lotempio guaranteed Deyanna she would receive a jury trial. He assured

Deyanna that he would take the matter to trial. However, after he was paid half of his fee by the private organization, he began to encourage Deyanna to accept a two-year deal arranged with the district attorney. Frank Lotempio's interest was not for his client Deyanna Davis, but for the victim in the matter State Trooper Ronald Ensminger. Frank Lotempio put all his energy into getting Deyanna to sign a statement composed by Lotempio to help Mr. Ensminger win a civil action against the city of Buffalo. Frank Lotempio lied to Deyanna Davis telling her she had to sign the statement because it was a part of the plea deal. Mr. Lotempio did not prepare for a trial. On numerous occasions Lotempio attempted to discourage Deyanna from going to trial. Attached are copies of a text message of a conversation between Deyanna and Frank Lotempio. During the conversation Frank Lotempio tries to persuade Deyanna to accept the plea. Additionally, Mr. Lotempio is determinant to get Deyanna to sign the statement for the victim. At one point Frank Lotempio and Deyanna's grandmother, Louise Nolley got into a very loud verbal confrontation in the hall of the court because he did not like Deyanna listening to her. Louise Nolley continually told Lotempio Deyanna did not want to accept a plea for a crime she did not commit. Lotempio screamed "this is why I don't want family members involved in court proceedings." Frank Lotempio went as far as to tell Deyanna that he attended a Bills game with Ronald Ensminger's attorney and promised that the victim would get on the stand and say whatever he wanted him to say. Additionally, Lotempio claimed to be good friends with the district attorney and his assistants. Lotempio made many false statements to his client. Deyanna became weary and did not have any trust in our Judicial System, the judges, the prosecutors, or any attorney. Lotempio's last obligation was to file A Notice of Appeal on behalf of his client within 30 days after sentencing, Lotempio filed the Notice of Appeal on August 16, 2023, 58 days after sentencing. A preponderance of evidence has been proven that Deyanna Davis did not receive effective representation throughout

13

the case and that a pattern of a conspiracy was processing. Honorable Judge Case was aware of existing violations of the law and chose to remain silent rather than correct the errors made in his courtroom, Sam Davis, intentionally fell far below the standards of an effective defense attorney. Sam intentionally violated the condition of the Attorney's Ethic Code by accepting money as a fee from his client after accepting the case pro bona on or about June 3, 2020. Sam Davis lied to the court and the Lawyer's Grievance Committee, claiming the $5,000.00 received was a gift from the plaintiff's family in appreciation of the decent work he was providing. He failed to submit motions in his client's behalf and in turn notified the district attorney of his failure to proceed, giving John Flynn, Ryan Haggerty and Assistant district Attorney Flaherty, leverage and time to include other court officers and interns and law clerks into the process of organizing a conspiracy of personal in natural designed to make Deyanna suffer because she had harmed one of their own. Misled his client, failed to prepare a defense and file document to refer and affordable to another attorney if or when the situation such as this should arise.

They were all aware of Deyanna's Constitutional Right to due process of law, the Right to the Courts and right to effective assistance of counsel was being violated and not one of the respondents corrected the mistake. Not one of the respondents reported the others unlawful actions as mandated in the rules. At this point, the respondents became conspires.

On June 22, 2023, against her better judgment Deyanna accepted a plea of 2 1/2 years, in fear of being confined and away from her children for an extended period for a crime she did not commit.

Honorable Judge Case promised Deyanna, the maximum time he could give if she went to trial. Deyanna had five young children that she did not want to leave any longer than she had to. With the conspiring and malicious treatment, she was receiving from her attorney's she did not trust them and felt they would do more harm than good. She felt the Honorable Case, was aware of

everything that was going on in his court. On May 15, 2023, Deyanna wrote Honorable Case a letter advising him of all her complaints to wit, ineffective Assistance of counsel, deterrence from the CPL and the illegal tactics of the prosecution. Letters were sent to the judge advising him of the violations of Deyanna's constitutional rights being violated, however, there were no replies to the letters and Honorable Judge Case never said anything in the court about the violations. Letters were additionally sent to Chief Judge Carter, advising him of the problems that were occurring in the Judge Case's court room. The pleas for help from Judge Carter was also unheard. Deyanna did not receive a response to any of her communications. At sentencing Deyanna advised Judge Case that she felt she was being forced to accept the plea on the record. She told Honorable Judge Case about the illegal tactics of Frank Lotempio telling her she had to sign a statement for Ronald Ensminger as a part of the plea agreement. The District Attorney said on the record that they had not made the statement a condition of her plea. Honorable Case should have taken Lotempio off the case at this point. Honorable Case remained silent and allowed the sentencing to proceed, knowing that Deyanna had not received effective assistance from counsel throughout the case. In addition, Honorable Case held an ample amount of meeting in his chambers with the ADA Haggerty and Flaherty and refused the pro se motions submitted that he was aware of. Deyanna was not a part of the meetings, there was no stenographic record of the conference. Deyanna had no trust in Lotempio and could only rely on Frank Lotempio's words as to what discussed. The plea should not have been accepted. Honorable Judge Case should have stopped the sentencing, and Deyanna should have received the jury trial she had requested from the very beginning. Honorable Judge Case did not fulfill his duties as a Judge to ensure Deyanna's rights were not violated and the proceedings were fair and followed the law. Judge Case neglected his obligation and conspired with the district attorney to wrongfully convict and imprison an innocent woman

for personal reasons. Judge Case should never have allowed Sam Davis to accept Deyanna Davis's case knowing he was placed on the list of attorneys who were being considered for a judge's seat.

On June 22, 2023, Honorable Case sentenced Deyanna to serve 2 1/2 years in prison and 3 years post release supervision. The matter had been in the system for over three years. Frank Lotempio was present. Prior to trial, Deyanna gave Lotempio a copy of a motion for a Temporary Restraining order that had been filed with the Erie County Clerk. Additionally, a copy was given to the prosecutor. Lotempio never addressed the motion or presented it to Judge Case, although Honorable Case, was aware of the motion.

On June 27, 2023, Louise Nolley hand delivered Deyanna's Notice of Appeal, motion for assignment of counsel, motion for recognizance bail on appeal and a poor person's motion to The Appellate Court, Fourth Department, 50 East Avenue, Rochester New York 14604 and served a copy with the district Attorney. An affidavit of Service was also submitted. Frank Lotempio submitted Notice of Appeal Motion on August 16, 2023, well past the 30 days deadline. In addition, Deyanna, requested the Erie County District Attorney release her property, her vehicle with all condense. Her telephone, keys, and purse). She was advised by the receptionist to contact her attorney because it was Lotempio's responsibility. to get the property released. Lotempio never replied to the request,

Deyanna's Motion to Proceed as a Poor Person and assignment of counsel was approved. However, the clerks returned the recognizance bail motion stating Deyanna had to attach a second poor person's motion before the motion could be heard. She was informed that the motion could be resubmitted. The motion was resubmitted and denied months later.

After not hearing from the assigned counsel, Deyanna asked Louise Nolley to call the Appellate court to find out the name of the attorney assigned to represent her on appeal. Erin Tresmonds, Chief Attorney from the Legal Aid Bureau of Buffalo was the attorney assigned to the case. Once Nolley communicated with her a date was scheduled for a meeting. Nolley met with Tresmond. Nolley discussed the issues Deyanna wanted to argue on appeal and afforded Tresmond copies of the documents she necessary for Tresmond to review, Nolley was informed that Tresmond would not be the attorney overseeing the case. Eventually Nicholas DiFonzo contacted Deyanna advising he would be responsible for her appeal. He contacted Deyanna on several occasions. He continually discouraged Deyanna, telling her not to mention the issues she thought important to her appeal. He continuously told Deyanna that she would face the original charges if she proposed the issues and that she would be facing 25 years or more if convicted. . He said the complaint would not be dismissed; her case would be put back into court with the original charges. He re-innervated that she could be facing 25 years. Once again Deyanna's attorney was using numbers to detour her from having a jury trial knowing she feared jeopardizing being away from her children. Mr. DiFonzo could not have reviewed the minutes of Deyanna's court proceedings, or the allegations of Criminal Procedural Laws having been violated. He would not challenge ineffective assistance of counsel or malicious prosecution. Mr. Difonzo, motioned for an extension of time to file his brief.

On or about March 15, 2024, Louise Nolley received copies of the transcripts in Deyanna's case from Nicholas Difonzo.

On April 11, 2024, David C. Schopp, Erin Tresmond, Nicholas Difonzo submitted an appeal brief on behalf of Deyanna.

17

On May 5, 2024, April J. Orlowski+9, responded to the appeal brief submitted by Legal Aid Assigned Attorneys, Schopp. Tresmond and Difonzo.

From May 17, 2024, through December 5, 2024, the clerk's office intercepted and withheld documents from Deyanna's supplemental brief with all intentions of delaying time to allow Deyanna's supplemental brief to be heard.

On May 17, 2023, Louise Nolley, mailed a supplemental Brief with supporting exhibits to the Appellate Court, Fourth Department in Rochester, N.Y. on behalf of Deyanna Davis. The brief was returned to Louise Nolley, claiming the brief had to be filed by Deyanna Davis. An amicus brief was submitted to the appellate Court by Louise Nolley to provide relevant information and argument the court to consider that Deyanna Davis wanted considered on appeal which her assigned counsel refused to include in their appeal brief. All people or entities desiring to do so may file an amicus brief in a listed case in support of a party to the case. Deyanna Davis is incarcerated and has limited access to the facility law library. She is limited in her understanding of the law. Her grandmother Louise Nolley understands the law, having worked in prisons law libraries for over 10 years. She was allowed to supervise the inmate law clerks exam to other inmates and to oversee other inmates taking the exam, in addition to going to college to become a paralegal. As an interested party and concerned citizen she assisted Deyanna throughout her court process and assisted Sam Davis, by researching cases during 2020 and 2021 when he was Deyanna's defense attorney. The appellant court clerks should not have intercepted and returned the supplemental brief Louise Nolley. This was the first constitutional violation of the appellate court's clerks abridging, Deyanna's right to access the court.

On or about May 20, 2024, the Appellate Court Clerk Lawrence Dalton returned the supplemental brief to Louise Nolley, explaining that the papers were not authorized by the law.

Written on the letter was also a note that the return date for supplemental brief is August 26, 2023. ( Exhibit ____ ) . Nolley was told she could not submit exhibits without permission from the court. This happened on three occasions all claiming the motion work was missing a document.

On May 31, 2024, via Greyhound Bus from Buffalo, New York to Rochester, New York, Louise Nolley hand delivered a motion for permission to file a supplemental brief, with exhibits on behalf of Deyanna. Copies of the papers were served upon John Flynn, Erie County District Attorney and Nicholas Difozio, by Louise Nolley. Nolley called the Appellate Court inquiring into the status of the supplemental brief one week later and was told there was no brief in the file. Nolley was told she could not submit exhibits without permission from the court. This happened on three occasions all claiming the motion work was missing a document. Nolley was told she could not submit exhibits without permission from the court. This happened on three occasions all claiming the motion work was missing a document.

On August 22, 2024, Deyanna Davis resubmitted her motion to file a Supplemental Brief to the Appellate Court, Fourth Department in Rochester, New York, and Louise Nolley served the district attorney and Nicholas Difonzo, with true and exact copies of the motion, supplemental brief, and affidavit of service.

On September 3, 2024, the supplemental brief was returned to Deyanna stating the date on the affirmation of Service had been whited out and returned. The date on the affirmation had been whited out a new date entered and notarized properly on August 22, 2024. In addition, Danielle demanded that the original and five copies of the brief had to be filed along with a printing specification statement. (A copy of the affidavit of service is attached and marked exhibit and the letter from Danielle is attached and marked as exhibit ___.) (The letter enclosed with the returned documents from Danielle E. Phillips attached and marked as Exhibit _____) In addition Danielle

19

advised Deyanna that her time limit to file her brief had lapsed and she would have to submit a motion for extension of time to file a supplemental brief. According to the letter the brief would be held until Deyanna had until October 7, 2023.

Once again Louise Nolley called the Appellate Court Clerk's office asking to speak to Lawrence Dalton. The same clerk answered and refused to allow Nolley to speak to Mr. Dalton. Nolley asked the clerk for her name and this time she said her name was Janine. On two occasions Nolley called Lawrence Dalton through the Appellate Court operator. Each time she received the answering machine she left messages requesting he return her call. Mr. Dalton never returned her calls.

Deyanna returned one copy with a letter to Mr. Dalton and one to the Chief Clerk Ann Dillon Flynn because she could not afford to make six copies of the 40+ page document. She had been granted permission to proceed on appeal as a poor person and assumed the clerks would accept the single copy. 22 NYCRR 1250.9(e) Practical Rules of the Appellate Division states Pro se or unrepresented parties shall be exempted from the requirement of filing the digital copy of any briefs or other documents. At this point it is fair to say Lawrence Dalton participates in the conspiracy to intentionally keep Deyanna's supplemental brief out of the court for review by the appeals judges scheduled to be heard November 17, 2024. Lawrence Dalton is a Licensed Court Law Clerk and as such should have known the rules.

Nolley contacted Me. Dalton through the switchboard requesting to speak to Mr. Dalton she received his answering machine. Nolley left a message and her telephone number, however, Mr. Lawrence never returned her call.

On October 2, 2024, Deyanna Davis filed a Motion for extension of time to file a Supplemental brief, Statement of Reason, and Affidavit of Service in the Appellate Court Fourth Department. The documents were accepted and filed. These motions are the same documents Deyanna has been trying to file since June of 2024.

On or about December 5, 2024, Deyanna Davis received an order signed by Ann Dillion-Flynn, stating her motion for extension of time to file a supplemental brief was denied because her appeal had been heard November 17, 2024. The plaintiff knows that the respondents in this action purposely delayed the filing of her supplemental brief by stealing legal documents intended to be filed in court. Ann-Dillon Flynn signed her name to a court order denying Deyanna her motion for extension of time to submit a supplemental brief. A law clerk does not have the authority to issue rulings on their own. A letter was also received from Nicholas DiFonzo dated_____2025, advising Deyanna that her appeal was denied with a short explanation stating Deyanna agreed to issues not being presented to the appeal judges, which is more evidence to be considered for the conspiracy and ineffective assistance of counsel the assigned attorney's rendered.

Criminal conspiracy involves an agreement made between two or more people, one acting in an overt act towards accomplishing an unlawful wrongful goal. At this point the plaintiff Deyanna Davis accuses Honorable Judge Kenneth Case, Honorable Judge Nowak, John Flynn, ADA Ryan Haggerty, ADA Ryan Flaherty, Sam Davis, Attorney Frank Lotempio, Erin Tresmond, Nicholas Difonzo, Ann Dillon Flynn, Lawrence Dalton and Janine ( Appellate Court Clerk Last name unknown) of organizing and completing a plan to stop Deyanna Davis's Fifth and Sixth Amendment of the Constitutional by delaying her supplemental brief from being presented to the appeal panel judges tampering with the United States Mail and stealing documents out of the file

21

and delaying court filing of documents so time would run out and court deadline rules timelines would be untimely.

**Claim  3**                        **Malicious Prosecution**

On June 1, 2020, Deyanna Davis, accidentally hit a New York State Trooper and allegedly a second office with her car during the George Floyd demonstration on Bailey Avenue in Buffalo, New York.  John Flynn and Buffalo Police and New York State troopers on that night decided Deyanna had intentionally hit the officer of law to cause him harm. John Flynn, for personal reasons, decided Deyanna should be punished before she was afforded her right to trial by jury, affecting the fundamental fairness of a pending criminal proceeding.

On the day in question, Deyanna Davis was driving her vehicle.  There were two passengers in the vehicle with her, Semaj Pigram and Walter Stewart.  Semaj Pigram shot Deyanna Davis in the side as she turned off Langmeyer Street onto Bailey Avenue.  None of the people in the vehicle were aware of a demonstration taking place.  Deyanna did not know what the pain she was experiencing was and slumped down in the driver's seat.  She could not see what was going on around her, however, she could hear a lot of people talking and shots being fired.  Attempting to get out of harm's way Deyanna continued to drive.  There was a line of officers approaching demonstrators, throwing tear gas or smoke bombs. Deyanna struck the trooper however she was unaware that she had hit him.  Officers began shooting at the vehicle as she drove down the street. Deyanna was shot 3-4 times by the police.  Semaj Pigram, who was surprised by the presence of the police  began firing a gun at the police out of the window.  He threw the gun into the front seat of the vehicle, jumped from the vehicle, and began running.  There was a brief foot chase, and Semaj Pigram was apprehended and taken into custody. Deyanna was taken to Erie County Medical Center and all three were arrested and charged. Semaj Pigram was not charged for

shooting at the police at the crime scene or for shooting Deyanna, in exchange for a plea bargain. Pigram was allowed to make false statements against Deyanna prompted by the district attorneys involved with the case in exchange for a lighter sentence. In addition, Pigram was promised no charges would be filed for shooting at and fleeing from the police. John Flynn, Ryan Haggerty, and Ryan Flaherty have shown prejudice against Deyanna Davis and convicted her of a crime before she was given a fair trial in accordance with the law. Her constitutional rights have been violated because the above-named respondents held a grudge against Deyanna because she has mistakenly hit an officer of the law. Flynn never investigated the possibility of Deyanna Davis being shot by Semaj Pigram; even though he knew Deyanna had been shot prior to hitting the officer. John Flynn did not adhere to the standards of professional conduct when he failed prosecute Semaj Pigram with a crime knowing a crime had been committed, Flynn violated his professional responsibility to Deyanna and to maintain public safety. He neglected to oversee the prosecution of criminal charges being filed against Semaj Pigram involving team members Ryan Haggerty and Ryan Flaherty, Ann Dillion-Flynn and members of the Appellate Court clerks who abridged Deyanna's right to access the court. Ann Dillion-Flynn and her under clerks removed legal documents filed in the Appellate Court by Deyanna Davis and Louise Nolley. The sole purpose of the illegal tactics was to delay Deyanna Davis, supplemental brief, from being submitted and reviewed by the judges. The Appellate Court Clerks intentionally detoured Deyanna's paperwork until after the appeal was heard.

During pretrial Honorable Judge Case, John Flynn, Sam Davis, and Frank Lotempio III guarantee Deyanna Davis be convicted and in prison at any cost for personal gain and revenge. Motions filed pro se were ignored and disposed of by the Honorable Judge Case, John Flynn, Sam Davis, and Frank Lotempio. Honorable Case was aware of the violations of Deyanna's

23

Constitutional Rights being violated and did nothing to intervene and stop the violations happening in his court. All failed to adhere to ethical obligations to afford Deyanna due process of law.

Erin Tresmond and Nicholas Difonzo participated equally and maliciously abridge Deyanna Davis's right to the court working in concert with John Flynn. Deyanna had several strong points of law that should have been challenged during her appeal. Deyanna discussed the issue of ineffective assistance of counsel, violations of the Criminal Procedure Law with her appeals attorney's. However, they refused to mention the issues in the appeals brief prepared by legal Aid assigned counsel Erin Tresmond and Nicholas Difonzo, even after receiving evidence to support Deyanna's allegations.

The respondents acting under the color of law deprived Deyanna of her rights protected by the Constitution and law of the State. Respondents acted in concert willfully and with the intent to cause irreparable harm in violation of 18 U.S.C. sections 242.

Claim 4    **Court officials have conspired and worked in concert to violate Deyana Davis's Constitutional Right to a fair trial. They used their power to gain personal satisfaction violating the plaintiff's Fifth, Sixth and Fourteenth Amendment(s) of the U.S. Constitution.**

Since the accident occurred, Former District Attorney John Flynn failed to prosecute criminals who have caused Deyanna Davis physical harm, failed to investigate crimes against Deyanna and failed to file charges against individuals he knew committed a crime against her.

On or about June 16, 2019, Deyanna Davis's daughter called 911 for assistance because Jordan Davis, Deyanna husband forced his way into Deyanna residence 27 Alice Street, Buffalo, New York 14215, placed a gun to Deyanna's head in the presence of her children and threaten to kill her. He physically punched, kicked, and beat Deyanna. Deyanna's oldest child ran to the phone

and called the police. When Jordan Davis heard the sirens of the police, he bolted out of the home out the rear door, He threw the gun to the ground and proceeded to run from the police. He was caught and the gun was found. Deyanna signed a complaint against Jordan, and he was arrested at the scene. He was eventually released on bail and the case went on for over a year. An Order of Protection was ordered for Jordan Davis to stay away from Deyanna Davis, Jordan accepted a plea and was scheduled to be sentenced to five years of incarceration. His case was before the Supreme Court Justice, Honorable Judge Kenneth Case. Shortly after Deyanna was arrested for running over a state Trooper.

On or about July of 2020, Deyanna was having a birthday party for her son at her home on Minnesota Avenue, Buffalo, New York, 14215. The party was outside. Jordan appeared at the party with a gun and began firing a gun at the residence. The children began running in all directions while the adults tried to gather them. The police were called. When they arrived some immediately went looking for Jordan while other officers remained at the scene collecting gun shells and taking statements. A complaint was made. However, District Attorney John Flynn failed to investigate the matter. Charges were never charged against Jordan Davis.

On another occasion in April 2021, Deyanna was having a gathering at her home celebrating her achieving her bachelor's degree in business management. At this time Deyanna was on 24-hour house arrest ordered by U.S. District Authorities. Charges stemming from the June 1, 2020, arrest. Again, Jordan Davis, appeared at the home on Minnesota Avenue, and shot up the home, with the children, family members and friends present. As Jordan ran to the vehicle waiting for him Deyanna's mother pulled up and saw what was going on. She followed the car Jordan Davis was riding in and called 911. As she drove, she told the dispatchers where she was. Jordan Davis went to his childhood home at 12 Langmeyer Street, Buffalo, New York 14215. The police arrived

25

knocked on the door of the residence. Jordan did not answer the door, and the buffalo Police officer's just left. Bullet shells were found on the ground In-front of Deyanna's home and statements were received from the parties at the party. A report was written, and Deyanna signed a complaint. District Attorney John Flynn never investigated the incident and never pressed charges against Jordan Davis.

In April of 2023, a friend of Deyanna's got into an altercation with a lady at a bus stop on Langfield Dr. in Buffalo, New York. Robert proctor, allegedly hit the victim across the face. He left the scene prior to the police arriving. The victim gave the license number of the vehicle he was driving. The Buffalo Police checked the license plate and found the vehicle belonged to Deyanna Davis. They went to Deyanna's residence and found Robert Proctor within the residence. The Buffalo Police Officers who arrived searched Deyanna's home without her permission. Approximately one hour after the police left the residence Child Protective Services arrived stating the Buffalo Police had called in a report of child endangerment and neglect. According to the report, while the police searched the home, they found animal feces in the children's bed, roaches were infested in the home and when they opened the refrigerator, they found roaches crawling in the refrigerator. The worker walked through the home inspecting all the allegations mentioned in the report. The worker found the report was fictitious and without merit. In accordance with the law, the worker visited the children's school, primary care physician and spoke individually with each child. The matter was left open for approximately three months then closed.

Additionally, Jordan Davis, who was incarcerated at the time, girlfriend Jamie Washington. Went to Deyanna's home at 6:00am and burst out all of Deyanna's vehicle windows. Deyanna has cameras at her residence, she reviewed the camera footage and saw Jamie breaking out the windows. She called the Buffalo Police to inform them of the incident. Deyanna told the operator

the street that Jamie resided on however she was not aware of the exact address. The operator said they needed the address, so Deyanna got one of her friends to drive her to get the address. When Deyanna arrived at the home, she called the police back giving them the exact address. She was told to remain there to wait for the police to arrive. Before the police arrived, Jamie saw Deyanna. Jamie came out of the house with a gun threatening to shoot Deyanna, the driver drove off and Jamie got into her car and followed the car Deyanna was in. Jamie was getting ready to ram the car from behind just as the police pulled in. Jamie was stopped and taken out of the car. Her 12-year-old daughter was in the car. The gun was found and Jamie was taken into custody. Her mother arrived and was allowed to take her granddaughter home with her. The buffalo Police never reported the incident to Child Protective services and Deyanna, although she filed a criminal complaint, was never contacted to appear in court to pursue charges.

On June 1, 2020, Deyanna was shot by a passenger in her car, Semaj Pigram. John Flynn knew there was a possibility of Deyanna being shot prior to hitting the state trooper she had been arrested for. Shells from the stolen gun found to be in the possession of Semaj Pigram were found on the rear seat where Pigram was sitting. John Flynn, failed to investigate the allegations and failed to charge Pigram with shooting Deyanna.

On March 17, 2021, Deyanna Davis filed an Article 78 Petition with the Erie County Clerk (Deyanna Davis V The People Of the State Of New York ) requesting that show cause why Deyanna was not receiving effective assistance of counsel and why her motions to dismiss the complaint and indictment were not heard in the court and requesting the court order the respondents to show cause why a judgment should not be made.

On May 14, 2023, Deyanna Davis filed a preliminary Injunction and temporary restraining order in the Erie County Court to cease her sentencing scheduled for June 22, 2023. (Index No.

27

805919/2023) The matter was assigned to Supreme Court Justice, Honorable Henry Nowak. A hearing was conducted. Present at the hearing were Assistant District Attorney Harmony A, Healy, Deyanna Davis, and Louise Nolley. The hearing was recorded. Both parties were heard, and Hon. Nowak advised the petitioner to adjourn the matter by suggesting the motion be amended, adding Honorable Judge Case as a respondent. It was agreed to accept the adjournment. An amended Restraining order was submitted, and a hearing was scheduled for June 16, 2023. At the opening of the hearing Judge Nowak advised the petitioner he could not hear the case because he had no jurisdiction because Honorable Judge Case had been included in the matter.

John Flynn, conspired with the Judge Kenneth Case, the Chief Clerk of the Appellate Court Ann Dillon- Flynn and Erie County Clerks (John and Jane doe )to keep Motions from being heard In the Erie County Court, and to detour Deyanna's Supplemental Brief out of the Appellate Courts: He conspired with Sam Davis and Frank Lotempio, to help convict Deyanna Davis of a crime and violated the Criminal Procedure Laws, the Penal Laws.

A. Attorney Sam Davis conspired with the prosecutor to keep a motion to dismiss a complaint filed pro se for Denying Deyanna Davis a speedy trial in accordance with the Criminal Procedure Law 30:30. Deyanna did not hear from her Attorney Sam Davis for 8 months after she had been charged with felony complaint. She contacted her attorney and suddenly, she was told an indictment had returned.

B. Sam Davis and the prosecutors conspired to cover up the fact that the prosecution had not advised Deyanna Davis had not been advised of her right to testify in her own behalf before the Grand Jury. Only after Deyanna filed a Motion to dismiss Prose in accordance with the law did the prosecution move in the case.

C. Honorable Kenneth Case was aware of the illegal tactics the prosecution and Sam Davis were using and did not correct the violations of the law. Deyanna wrote a letter to Honorable Case advising him of the improper action and constitutional violation that were being used in his court, Honorable Case never addressed the letter and did nothing to correct the illegal actions or ensure Deyanna received a fair trial. Additionally, the Honorable Case was aware that Deyanna wanted a trial. The prosecution would not accept the fact and kept delaying the trial. There were many in chamber conversations that Deyanna was not included in. She had to depend on the lawyer's interpretation of what was discussed and arranged, and she never got an explanation as to why there were so many closed-door conferences and adjournments. When Deyanna told the judge on her sentencing day, she felt pressured and forced to accept the plea Judge Case should have stopped proceeding. Instead, he ignored the defendant's plea for help. Assistant District Attorney Haggerty stated on the record that Deyanna kept saying she wanted to go to trial and kept changing her mind. The reason for the confusion was the ineffective assistant Deyanna was receiving from her attorney's. Not one attorney who represented Deyanna during this matter wanted to go to trial. They all kept saying she had a good plea deal on the table. They continued to stress the fact that the first offer was 25 years. Because the prosecution lowered the time to 21/2 years with three years post-conviction did not sound better to a lady who did not commit the crime with which she was charged. Deyanna never intentionally hit the officer. Deyanna was coerced into accepting a plea despite her innocence. She thought she would have a fair chance on appeal. Instead, she had to deal with the conspiring and unlawful clerk's office at the Appellate Court. Whoever under color of law willfully subjects any person to the deprivation of any rights, privileges, or

29

immunities secured or by the constitution or laws of the United States shall be guilty of a crime.

Claim 5             -             **Defamation of Character. Slander and Liability**


## PREVIOUS LAWSUITS IN STATE AND FEDERAL COURT

There have been no other lawsuits in state or federal court dealing with the same facts involved in this action.

## 6. SUMMARY OF RELIEF SOUGHT

1. Plaintiff respectfully requests due to the violations of the laws and rules of New York State; The decisions rendered by the Appellate Court Judges be vacated, the indictment be dismissed, the complaint be dismissed and Deyanna Davis be released from custody immediately in addition to respondents Case, Davis, Flynn, Haggerty, Flaherty, Ann Dillon-Flynn, Dalton, Phillips and Janine (last name unknown be prosecuted to the fullest extent of the law.

2. $65,000.00 ($200,00 per day ) confinement.

3. $20,000.00 Punitive damages in the amount of $20,000.00 each from Honorable Judge Kenneth Case, John Flynn, ADA Haggerty, ADA Flaherty, Ann Dillon – Flynn, Lawrence Dalton, Michelle Phillips, Janine (last name unknown). Sam Davis, Frank Lotempio III, Erin Tresmond, and Nicholas Difonzo, for wonton and willful misconduct.

4. $100,000.00 from the County of Erie, (Erie County Holding Center Sheriff's and Medical Employee's ) for cruel and unusual punishment, pain, and suffering,

5. $100,000.00 for defamation of character ( the publicity on the news and news articles)

6. $100,000.00 for loss of property( complete home furnishings, vehicle, I phone )

7. $5,000, from Sam Davis. for fees illegally received for representing client.

8. $6,500.00 from Frank Lotempio, for services not rendered; and for all damages that the court deems fit and proper in accordance with the law.

9. $50,000.00 for each of Deyanna Davis' 5 children pain and suffering and $100,000.00 for Deyanna Davis Child who was born and resides in Bedford Hills Correctional Facility from birth.

Totaling $2,567,500.00.

Plaintiff requests a Jury trial.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on . *March 4, 2026*

_D. Davis_

Deyanna Davis

177 Delaware Street

Tonawanda, New York 14150

31